# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 976 | **DATE** | 5/28/2003 |
| **CASE TITLE** | Tucker vs. Olympia Dodge | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached order, Olympia's motion to dismiss (6-1) is granted in part and denied in part. Plaintiffs' FCRA claims relying on the alleged obtaining of their credit records without proper authority are dismissed. The motion is otherwise denied. Olympia is directed to answer the complaint within seven days of this order. The case is set for a status on 6/10/03 at 9:30 a.m. to discuss the scheduling of the motion for class certification and possible dispositive motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 10 |
| | Copy to judge/magistrate judge. | | | |
| | OR6 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE TUCKER and <br> BONNIE M. SANDERS, <br><br> Plaintiffs, <br><br> vs. <br><br> OLYMPIA DODGE OF COUNTRYSIDE, <br> INC. doing business as DODGE CITY OF <br> COUNTRYSIDE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 03 C 0976 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

JUN 2 - 2003

JUN 2 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Andre Tucker and Bonnie Sanders have sued Olympia Dodge on behalf of a putative class of consumers, all of whom allegedly received certain commercial mailings from Olympia. The plaintiffs allege that Olympia obtained and accessed their credit reports without a permissible purpose in violation of the Fair Credit Reporting Act. They further allege that Olympia failed to include in its mailings certain mandatory disclosures in the clear and conspicuous manner that the FCRA requires. The case is before the Court on Olympia's motion to dismiss.

**Factual Background**

The facts alleged in the complaint, and regarded as true for purposes of this motion, *see Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002), are as follows. During late 2002, Olympia mailed each of the plaintiffs a promotional flyer notifying them that, subject to certain conditions, they had been approved for an auto loan of up to $19,500.00 toward the

/ O

purchase of a new or used car at Olympia's car dealership, Dodge City of Countryside. *See* Cmplt. ¶ 6, Ex. A (Olympia's promotional mailing). In fine print at the bottom of the page, the flyer stated: "You are pre-approved for a minimum auto loan amount of $1000.00; however, you may qualify for more." *Id.*, Ex. A. The flyer informed the plaintiffs that in order to take advantage of the offer they were required to appear at the dealership and present a purchase voucher that was enclosed along with the flyer. *Id.* The purchase voucher was styled a check. *Id.* On the front, alongside various commercial disclaimers, appeared the particular plaintiff's name and address and the words "[a]pproved up to the sum of 19,500.00." *Id.* Typewritten on the back of each voucher appeared the following:

> "Information contained in your file at a credit reporting agency was used in connection with this offer for credit. You have received this offer because you satisfied the criteria for credit worthiness under which you were selected. ... You have the right to prohibit information contained in your file at a credit reporting agency from being used in connection with any consumer credit transaction that you do not initiate. ... "

*Id.* The back of the voucher also contained a list of credit reporting agencies and contact information that the plaintiffs might use in order to exercise their right to restrict access to their credit reports in the future. *Id.*

The plaintiffs allege that Olympia obtained and accessed their credit reports without their permission and without a "permissible purpose" as required by the Fair Credit Reporting Act ("FCRA"). *See* 15 U.S.C. § 1681b. They allege that any offer contained in the promotional materials that they received from Olympia were "so vague, self contradictory, and lacking in terms" as not to constitute a "firm offer of credit" within the meaning of FCRA. Cmplt. ¶¶ 14, 15. They further allege that Olympia's offer was a sham, that the offer of $1000 line of credit useable only to finance the purchase of an automobile was a pretext for obtaining the plaintiffs' credit reports, and that Olympia

2

held no expectation that any significant number of consumers would accept such a minimal line of credit. *Id.*, ¶ 16. Finally, the plaintiffs allege that Olympia failed to make certain mandatory disclosures along with their offer in the "clear and conspicuous" manner that FCRA requires. *Id.*, ¶ 19. Olympia moves to dismiss the complaint for failure to state a claim.

## Discussion

In considering Olympia's motion to dismiss, we accept as true all well-pleaded allegations of the complaint, and construe ambiguities in favor of the plaintiffs. *Thompson*, 300 F.3d at 753. Dismissal is proper only if it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). We note that the plaintiffs have attached as an exhibit to the complaint copies of the documents (the flyer and purchase voucher) that they received from Olympia. We consider these documents as part of the pleadings. Fed. R. Civ. P. 10(c); *Thompson*, 300 F.3d at 753.

The plaintiffs allege that Olympia obtained their credit reports without their written permission and without a "permissible purpose" as required by FCRA. *See* 15 U.S.C. § 1681b(f). Their action is based on 15 U.S.C. § 1681n, which imposes civil liability for willful noncompliance with any requirement imposed by the Act. Olympia contends that the plaintiffs have failed to state a claim, or, more precisely, that they have pleaded themselves out of court. It argues that the contents of its promotional flyer and the accompanying purchase voucher which the plaintiffs have attached to the complaint demonstrate full compliance with FCRA.

Under FCRA, it is permissible to obtain a credit report on a consumer only with the written

3

consent of the consumer or for certain permissible purposes. *See* 15 U.S.C. 1681b(f) ("a person shall not use or obtain a consumer report for any purpose unless ... the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section ..."). One permissible purpose for obtaining a consumer's credit report is the making of a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(i). A "firm offer of credit" is defined as "any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). The offer may be further conditioned on a consumer's compliance with certain other criteria as specified by the Act. *Id.* The plaintiffs allege that they never gave Olympia written permission to access their credit reports. They further allege that the commercial mailing that they received from Olympia, in which Olympia acknowledges having accessed the plaintiffs' credit reports, cannot be considered a "firm offer of credit" within the meaning of § 1681a(l). In its motion to dismiss, Olympia insists that the complaint and the attachments establish that it made a "firm offer of credit."

The mailing that each of the plaintiffs received from Olympia consists of two documents: a flyer and a purchase voucher. The flyer states that its recipient is "approved for an auto loan of up to $19,500." Cmplt., Ex. A. It also states, however, that the recipient is pre-approved for a minimum auto loan amount of $1000. *Id.* The flyer provides clear instructions for how its recipient might accept the offer. It directs the recipient to appear "this weekend" at "Dodge City of Countryside located at 5949 S. La Grange Rd., Countryside, IL," and to present the enclosed purchase voucher upon entering the dealership. *Id.* Though the voucher mentions nothing about the $1000 minimum, it does not

4

contradict the terms of the offer as they are presented in the flyer. Rather, it reiterates that the recipient might qualify for as much as $19,500 in credit.

As we have discussed, a "firm offer of credit" under FCRA includes "any offer of credit to a consumer ... that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer ..." Olympia's offer of $1000 in credit fits within this definition. The plaintiffs do not allege that Olympia failed to honor that offer or intended not to honor it. Nor do they allege flaws in the criteria that Olympia used to select them for the $1000 offer. FCRA does not require a "firm offer" to be in any particular amount; thus the $1000 offer qualifies even if Olympia held out the possibility of more as a come-on. Plaintiffs seem to suggest a theory akin to a bait-and-switch scheme, but FCRA does not regulate such alleged frauds, at least not the type alleged here.

Plaintiffs contend that Olympia's offer was too vague to constitute an offer capable of acceptance. Relying on Illinois law, they argue that an offer of credit is not capable of being accepted to form an enforceable contract unless it specifies "(a) the amount of credit, (b) the rate of interest and (c) the duration of the credit." Pl's Resp. at 8-9, citing *Commonwealth Eastern Mtge. Co. v. Williams*, 163 Ill. App. 3d 103, 516 N.E.2d 515, 519-20 (1987). This misses the mark. FCRA does not condition the validity of a "firm offer of credit" upon its inclusion of certain terms, such as a rate of interest. Instead, a "firm offer" is defined in terms of a creditor's intention to honor an offer of credit in accordance with the creditor's own undisclosed, predetermined criteria. Consistent with the definition provided in § 1681a(l), a creditor could make a "firm offer" to a consumer and later withdraw the offer based on information discovered in the consumer's loan application. *See* 15 U.S.C. § 1681a(l)(2)(B).

5

In fact, the only term that must be disclosed along with a "firm offer of credit" is a creditor's demand for collateral. *See id.* § 1681a(l)(3)(B). Moreover, FCRA is a federal commercial regulation requiring uniformity of application. For this reason, the meaning of a "firm offer of credit" under the Act cannot be made to depend upon varying state law definitions of what constitutes an "offer of credit." *Cf. Cole v. U.S. Capital, Inc.,* No. 02 C 1858, 2003 WL 21003696, * 4-5 (N.D. Ill. May 1, 2003) (what constitutes a "firm offer" under FCRA cannot be determined by reliance on state contract law definitions) (citing *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43 (1989) (stating that federal statutes are generally intended to have uniform nationwide application, and articulating the presumption that the application of a federal act is not dependent on state law)).

The plaintiffs next allege that Olympia's offer was a sham. Specifically, they allege that an offer of a $1000 line of credit towards the purchase of an automobile is not a meaningful proposal, and that Olympia's offer was simply a pretext for gaining access to the plaintiff's credit reports. Olympia's true purpose in obtaining their credit reports, the plaintiffs allege, was to target them for automobile sales promotions. But this allegation likewise fails to state a claim under FCRA. As we have discussed, the mailing that the plaintiffs received from Olympia qualifies as a "firm offer of credit" as defined by § 1681a(1). It is true, as the plaintiffs observe, that Olympia could not seek to obtain consumer reports for the sole purpose of fashioning a list of potential marketing targets. *See, e.g., Trans Union Corp. v. FTC,* 245 F.3d 809 (D.C. Cir. 2001) (affirming FTC determination that certain mailing lists distributed by a credit reporting agency were "consumer reports" within the meaning of FCRA, and could not be sold for target marketing purposes). But making a firm offer of credit is a permissible purpose for obtaining a consumer report under § 1681b. Olympia was entitled to obtain the plaintiffs' credit reports

6

for this purpose, even though it sought to sell the plaintiffs a car. *See In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 335 (N.D. Ill. 2002) ("[i]n essence [FCRA] allows the sale of target market lists provided the lists are used for making firm offers of credit or insurance to the consumers on the list."). In short, insofar as they rely on allegations that Olympia accessed their credit reports without a permissible purpose, the plaintiffs have failed to state a claim under FCRA.

The plaintiffs also allege separately that Olympia failed to make certain mandatory disclosures along with its offer in the "clear and conspicuous" manner required by the Act. Section 1681m(d)(1) of FCRA provides:

> Any person who uses a consumer report ... that is provided to that person under section 1681b(c)(1)(B) of this title, shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that (A) information contained in the consumer's consumer report was used in connection with the transaction; (B) the consumer received the offer of credit ... because the consumer satisfied the criteria for credit worthiness ... under which the consumer was selected for the offer ... (C) if applicable, the credit ... may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness ... or does not furnish any required collateral; (D) the consumer has a right to prohibit information contained in the consumer's file ... from being used in connection with any credit ... transaction that is not initiated by the consumer; and (E) the consumer may exercise his right referred to in subparagraph (D) by notifying a notification system established under 1681(b)(e) of this title.

Section 1681m(d)(2) further provides that "[a] statement under paragraph (1) shall include the address and toll-free telephone number of the appropriate notification system established under 1681(b)(e) of this title." The plaintiffs acknowledge that Olympia made the disclosures required by 1681m(d)(1). They allege, however, that the required disclosures were too small, too light, and too obscure among the promotional materials in Olympia's mailing to qualify as "clear and conspicuous statements."

7

Olympia moves to dismiss this claim, arguing that the voucher conclusively demonstrates that the disclosures were clear and conspicuous.

The plaintiffs' allegation that Olympia's disclosures were not clear and conspicuous as required by § 1681m(d) states a claim under FCRA. *Cf. Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 806 (7th Cir. 2001) ("allegations that disclosures are not 'clear and conspicuous' [under the Truth in Lending Act] state a claim upon which relief may be granted") (citing *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514 (7th Cir. 1999); *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (allegation that a required disclosure is confusing states a claim under the Fair Debt Collection Practices Act). Olympia's motion to dismiss the claim under Rule 12(b)(6) is therefore denied.

We note, however, that whether a particular disclosure is "conspicuous" within the meaning of a commercial statute is typically a question to be decided by the court. *See Check-N-Go*, 200 F.3d 511, 514 (conspicuousness for purposes of Truth in Lending Act regulations is an issue of law). Though the issue cannot properly be decided on a Rule 12(b)(6) motion in view of the complaint's inclusion of the necessary verbiage, it likely can be decided on a motion for judgment on the pleadings or a motion for summary judgment. *See Check-N-Go*, 200 F.3d 511 (commercial mailing attached to the complaint as evidence that defendant failed to comply with "clear and conspicuous" disclosure requirements imposed by TILA authorized court to grant judgment on the pleadings under Rule 12(c) or to convert the motion to dismiss into a motion for summary judgment and to grant that relief). But before we go that route, the Court would prefer to deal with the plaintiffs' motion for class certification, which was held in abeyance pending the resolution of the motion to dismiss.

## Conclusion

For the reasons stated above, Olympia's motion to dismiss [docket # 6-1] is granted in part and denied in part. Plaintiffs' FCRA claims relying on the alleged obtaining of their credit reports without proper authority are dismissed. The motion is otherwise denied. Olympia is directed to answer the complaint within seven days of this order. The case is set for a status hearing on June 10, 2003 at 9:30 a.m. to discuss the scheduling of the motion for class certification and possible dispositive motions.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 28, 2003